IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| TIMOTHY L. GRAHAM, | : |
| Plaintiff, | : |
| v. | :   Civil Action No. GLR-13-3852 |
| NEU-ION, INC., | : |
| Defendant. | : |

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendant's, Neu-Ion, Inc. ("Neu-Ion"), Motion for Summary Judgment. (ECF No. 38). Pro se Plaintiff Timothy L. Graham brings this action against his former employer, Neu-Ion, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e et seq. (2012). The Motion is ripe for disposition. Having considered the Motion and supporting documents, the Court finds no hearing necessary. See Local Rule 105.6 (D.Md. 2014). For the reasons outlined below, Neu-Ion's Motion will be granted.

**I.   BACKGROUND**[1]

Neu-Ion, headquartered in Baltimore, Maryland, designs, installs, and services high purity water systems. On November 7, 2005, Graham, an African-American male, began working for

---

[1] Unless otherwise noted, the following facts are taken from the parties' briefings on the instant motions, and are viewed in the light most favorable to the nonmoving party.

Neu-Ion as a service technician.  During Graham's employment, Neu-Ion employed eight technicians.  Neu-Ion maintained a long-standing practice and expectation that all service technicians work cohesively as part of a team.  This expectation was communicated to Graham during his employment with Neu-Ion.  Neu-Ion's Service Manager, Robert Housaman, issued work assignments requiring one or two technicians to travel in a work vehicle to Neu-Ion's customers and perform maintenance or repair services.  Over the course of his employment, Graham received two satisfactory performance evaluations by the president of Neu-Ion, Lee A. Heikkinen, (see ECF No. 41-1) and Housaman (see ECF No. 41-5) (stating Graham's willingness and ability to communicate, cooperate, and work with co-workers, supervisors, and customers was satisfactory in June 2010).

In October 2006, Graham and his co-worker, Dennis Blair, a white male, were given a work assignment located in Pennsylvania.  After completing the assignment and leaving the customer's premises, Blair reentered the building without Graham and damaged the customer's equipment.  When Blair exited the building, he began to direct profanity, threats, and racial slurs towards Graham.  Graham then notified Housaman of Blair's conduct.  Graham then left the worksite in fear of his safety.  Graham also reported the incident to Heikkinen.  Blair continued to verbally attack and harass Graham over the course of his

employment.  Despite Graham's complaints, Housman told Graham to ignore the harassment.  On March 14, 2012, Blair again directed profanity towards Graham.  Graham reported the incident to Housaman, who ignored him and walked away.

Graham also worked with Quenton Bolling, an African-American male.  Graham reported issues regarding Bolling's job performance and violations of harassment policies to Housaman on various occasions including on March 15, 2012.  On March 30, 2012, Graham was assigned to work with Bolling on an assignment, but Graham stated he did not want to work with Bolling because of Bolling's previous harassing behavior and negative attitude towards him.  In Response to Graham's request to work with another technician, Heikkinen allowed Graham to complete the assignment alone.

On April 2, 2012, Housaman terminated Graham for his refusal to work with his co-workers.  Graham requested a meeting with Housaman in accordance with the procedure outlined in Neu-Ion's employee manual.[2]  Heikkinen denied Graham's request and approved his termination.  In April 2012, Graham filed a charge

---

[2] The manual requires managers to follow a three-step procedure when disciplining employees: 1) give an oral reminder in effect for two weeks; 2) if the employee's performance does not improve, give a written reminder in effect for two weeks; and 3) dismiss the employee if performance has not improved. The manual also states "an employee who does not display satisfactory performance and accomplishment on the job may be dismissed, in certain cases, without resorting to the steps set forth in this policy."  (See ECF No. 41-2).

of discrimination with the United States Equal Employment Opportunity Commission ("EEOC").  The EEOC was unable to conclude whether Graham's allegations established a violation under Title VII and issued him a right to sue letter on September 20, 2013, which he received on September 24, 2013.

On December 20, 2013, Graham commenced this action against Neu-Ion alleging racial discrimination in violation of Title VII with regard to his termination, a failure to follow the Neu-Ion disciplinary procedure, and the harassment he suffered from his co-workers.

Graham maintains that he performed his job well, received positive assessments, and his employment record does not include any conflicts with management or co-workers.  He further claims he reported harassment by his co-workers, namely Blair and Bolling, to Housaman several times.  Housaman and Heikkinen insist that Graham never complained of harassment based on his race.  Heikkinen and Housaman contend that Graham's race did not affect the decision to terminate his employment.  They state Graham's inability to get along with his co-workers, refusal to work as a member of a team, and failure to complete tasks as assigned caused his performance to fall below Neu-Ion's expectations.

## II.   DISCUSSION

**A. Standard of Review**

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970)). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson, 477 U.S. at 247-48 (alteration in the original).

A "material fact" is one that might affect the outcome of a party's case.  Id. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by

5

the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265.

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. Rule 56(c) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) (citing Barwick v. Celotex Corp., 736 F.2d 946, 963 (4th Cir. 1984)).

**B. Analysis**

   **1. Race Discrimination Claim**

Graham's Title VII race discrimination claim cannot survive summary judgment because he fails to establish a prima facie case. Title VII of the Civil Rights Act of 1964 provides that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate

against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "The crucial issue in a Title VII action is an unlawfully discriminatory motive for a defendant's conduct, not the wisdom or folly of its business judgment." Jiminez v. Mary Wash. Coll., 57 F.3d 369, 383 (4th Cir. 1995), cert. denied, 516 U.S. 944 (1995).

A plaintiff may establish a race discrimination claim under either the "mixed-motive" framework or the "burden-shifting" scheme set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 807 (1973). In a mixed-motive case, a plaintiff must sufficiently plead, through direct or circumstantial evidence, that his race "was a motivating factor" in his employer's decision to terminate him. Hill v. Lockheed Martin Logistics Mgmt., 354 F.3d 277, 284-85 (4th Cir. 2004).

"[T]he plaintiff 'must produce direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact.'" Rhoads v. FDIC, 257 F.3d 373, 391 (4th Cir. 2001) (alteration in original) (quoting Brinkley v. Harbour Recreation Club, 180 F.3d 598, 607 (4th Cir. 1999)). Such evidence includes "conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment

7

decision." Id. at 391-92 (quoting Brinkley, 180 F.3d at 607) (internal quotation marks omitted). "To demonstrate such an intent to discriminate on the part of the employer, an individual alleging disparate treatment based upon a protected trait must produce sufficient evidence upon which one could find that the protected trait . . . actually motivated the employers' decision." Hill, 354 F.3d at 286.

Alternatively, a plaintiff can establish discrimination under the McDonnell Douglas burden-shifting scheme. A plaintiff first bears the burden of proving a prima facie case of discrimination by a preponderance of the evidence. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). If a plaintiff successfully presents a prima facie case, the burden shifts to the employer to provide a legitimate, nondiscriminatory justification for its action. Id. Finally, if the employer carries its burden, the plaintiff must show that the employer's legitimate, nondiscriminatory reason is merely a pretext for discrimination. Id.

To allege a prima facie case of race discrimination under Title VII, a plaintiff must establish with sufficient evidence that "(1) he is a member of a protected class; (2) he suffered adverse employment action; (3) he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; and (4) the position

remained open or was filled by similarly qualified applicants outside the protected class." Holland v. Wash. Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007).

Here, under the mixed-motive framework, the Court finds Graham has not presented any direct or circumstantial evidence that Neu-Ion was motivated by a discriminatory attitude when he was terminated. Under the McDonnell Douglas burden-shifting analysis, Graham has shown he is a member of a protected group and he suffered an adverse employment action when he was discharged. Graham, however, fails to establish the third and fourth elements of a prima facie race discrimination case.

As to the third element, Graham presented evidence that he was meeting legitimate expectations years prior to his termination. Specifically, Graham received satisfactory performance evaluations from Heikkinen on March 27, 2009 (see ECF No. 41-1), and Housaman in June 2010 (see ECF No. 41-5) (stating Graham's willingness and ability to communicate, cooperate, and work with co-workers, supervisors, and customers was "satisfactory"). Yet, there is evidence that he refused to work with his co-workers as assigned. In his deposition, he testified that on some occasions he would suggest that he work alone on assignments. Also, he testified that, on March 12, 2012, when he was assigned to work with Bolling, he asked to

9

work with another technician. He also stated that he reported his criticisms of his co-workers' job performance to Housaman.

Neu-Ion asserts Graham's termination resulted from his inability to get along with his co-workers, refusal to work as a member of a team, and failure to complete tasks as assigned, which was demonstrated by Graham's actions on March 12, 2012. While his willingness and ability to cooperate and work with co-workers was satisfactory in 2009, his subsequent complaints and reports regarding his co-workers' job performance, numerous requests to work alone, and desire to avoid working with Bolling on March 12, 2012 were grounds for immediate termination according to Neu-Ion's disciplinary policy. (See Opp'n to Mot. for Summ. J. Ex. 2 at 21, ECF No. 41-2) ("Occurrences of any of the following violations . . . may result in immediate termination without warning: . . . engaging in behavior designed to create discord and lack of harmony . . . [and] indifference or rudeness towards a . . . fellow employee . . . .").

Further, to establish the fourth element of the prima facie case, Graham must show that Neu-Ion hired a replacement for his position outside of the protected class or that the position remained open. Graham has not addressed this element in his brief. He has shown no attempt to obtain this information through discovery and has given no reason why this information

was not in his brief.  Due to this complete absence of evidence, Graham has failed to meet his burden.

Even if Graham successfully alleged the prima facie case of race discrimination, he cannot show that Neu-Ion's legitimate, nondiscriminatory reason for his termination was a pretext for discrimination.  The Court of Appeals for the Fourth Circuit has stated that "when an employer gives a legitimate, non-discriminatory reason for discharging the plaintiff, 'it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.'"  Hawkins v. PepsiCo, Inc., 203 F.3d 274, 279 (4th Cir. 2000) (quoting DeJarnette v. Corning Inc., 133 F.3d 293, 299 (4th Cir. 1998)).  A court should not second-guess an employer's appraisal.  Id. at 280.  Rather, the Court's sole concern should be "whether the reason for which the defendant discharged the plaintiff was discriminatory."  Id. (quoting DeJarnette, 133 F.3d at 299).  Graham has failed to show that Defendant's legitimate, nondiscriminatory grounds for discharging him were pretext.

Accordingly, Graham's claim of race discrimination fails, and Neu-Ion is entitled to summary judgment on that claim.

**2. Hostile Work Environment**

Graham also fails to establish a claim for a hostile work environment.  To prove a hostile work environment claim, the

11

plaintiff must show: "(1) the harassment was unwelcome; (2) the harassment was based on [the plaintiff's] race . . . ; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998). A plaintiff must do more than make conclusory allegations of harassment. Id.

Courts determine whether an environment is sufficiently hostile or abusive by looking at all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Boyer-Liberto v. Fontainebleau Corp., No. 13-1473, 2015 WL 2116849, at *9 (4th Cir. May 7, 2015) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)) (internal quotation marks omitted). "[S]imple teasing, off-hand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).

Extremely serious isolated incidents are those which amount "to discriminatory changes in the terms and conditions of employment." Id.  "In measuring the severity of harassing

conduct, the status of the harasser may be a significant factor—e.g., a supervisor's use of a racial epithet impacts the work environment far more severely than use by co-equals." Boyer-Liberto, 2015 WL 2116849, at *10 (quoting Rodgers v. W.-S. Life Ins. Co., 12 F.3d 668, 675 (7th Cir.1993)) (internal quotation marks omitted). "The status of the harasser also is relevant to element four of a hostile work environment claim, which necessitates proof that the harassment is imputable to the employer." Id.

With regard to the harassment Graham allegedly endured from Bolling, Graham has not presented any evidence demonstrating three elements of a racial hostile work environment claim. Graham states Bolling, an African-American male, harassed him, but does not describe the nature of the harassment or whether it was based on his race. Further, Graham does not state whether the harassment was frequent, severe, physically threatening or humiliating, or interfered with his work performance. See Spriggs v. Diamond Auto Glass, 242 F.3d 179, 184 (4th Cir. 2001) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). Additionally, Graham does not demonstrate that Bolling's conduct can be imputed to Neu-Ion.

Conversely, Graham presents evidence to support two incidents in which Blair directed racial slurs and profanity at him, but Graham has not shown that the incidents were extremely

13

serious.  Such isolated incidents involving a mere coworker do not amount to severe and pervasive harassment.  Though Graham testified Blair continued to verbally attack and harass him over the course of his employment, he has not described the nature of the comments, or when and where they were made.

Further, Graham testified in his deposition that he did not mind working with Blair and only disliked the offensive comments Blair made.  "Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard."  E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008) ("[C]omplaints premised on nothing more than 'rude treatment by [coworkers]' . . . are not actionable under Title VII." (quoting Baqir v. Principi, 434 F.3d 733, 747 (4th Cir. 2006))).

Thus, without knowing the statements made by Blair or their frequency, the Court finds as a matter of law, they were not severe or pervasive.  Based on the totality of the circumstances, the Court does not find that Graham's work environment was hostile or abusive.  The Court, therefore, finds Graham cannot demonstrate a claim for hostile work environment and Neu-Ion is entitled to summary judgement on this claim.

### 3. Retaliation

The Court finds Graham fails to establish a prima facie case of retaliation. Graham claims he was terminated by Neu-Ion in retaliation for his complaints to Housaman regarding the harassment he received from his co-workers. To support a claim for retaliation, a plaintiff must demonstrate: (1) "that he engaged in a protected activity," (2) "that the employer took an adverse action against him," and (3) "that a causal relationship existed between his protected activity and the employer's adverse action." Baqir v. Principi, 434 F.3d 733, 747 (4th Cir. 2006) (citing Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004)). If the defendant can then put forth a nonretaliatory reason for its action, the plaintiff must proffer evidence demonstrating that the defendant's reason is pretextual. Id.

A protected activity includes opposing unlawful employment practices that "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race," including the maintenance of a racially hostile work environment. Jordan v. Alt. Res. Corp., 458 F.3d 332, 339 (4th Cir. 2006) (quoting 42 U.S.C. § 2000e-2(a)(1)). Title VII protects the right of employees "to complain to their superiors about suspected violations of [the statute]." Bryant v. Aiken Reg'l Med. Ctrs., Inc., 333 F.3d 536, 543–44 (4th Cir. 2003). Though it is not

necessary that an employee's underlying hostile work environment claim be meritorious in order to succeed on a retaliation claim, see Ross v. Commc'ns Satellite Corp., 759 F.2d 355, 357 n.1 (4th Cir. 1985), abrogated on other grounds by Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), the employee must have an objectively reasonable belief that he is opposing an unlawful employment practice, see EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 406 (4th Cir. 2005).

Though the Court finds that the harassment Graham complained of to Housaman did not amount to an actual hostile work environment, the Court must determine whether Graham could have reasonably believed Neu-Ion "was in the grips of a hostile work environment or that one was taking shape." Jordan, 458 F.3d at 341. Graham states he complained of a racist incident in October 2006 and a profane incident in March 2012, both involving Blair. Graham also states in his deposition that he complained to Housaman about offensive language and behavior several times, but does not provide any additional information regarding those complaints.

Based on the scant evidence presented, the Court finds that no objectively reasonable person could have believed that Neu-Ion "was, or was soon going to be, infected by severe or pervasive racist, threatening, or humiliating harassment." Id. Though Graham could have reasonably concluded that Blair was a

16

racist based on the offensive language Blair used in October 2006 and March 2012, "the mere fact that one's coworker has revealed himself to be racist is not enough to support an objectively reasonable conclusion that the workplace has likewise become racist." Id. The Court, therefore, concludes that Graham has failed to establish that he engaged in a protected activity and Neu-Ion is entitled to summary judgment on this claim.

### III. CONCLUSION

For the foregoing reasons, the Court will GRANT Neu-Ion's Motion for Summary Judgment (ECF No. 38). A separate Order follows.

Entered this 3rd day of June, 2015

/s/
_____
George L. Russell, III
United States District Judge